Good morning. May it please the court. My name is Christopher Belmore. I represent Patrick Opdahl. We're asking the court to reverse and remand his convictions based on two errors. First, the district court erred, not dismissing the indictment, which omitted a necessary element from both counts. Second, the district court erred by denying Opdahl's motion for acquittal because the evidence at trial was insufficient to convict for both counts. As for the first issue, in both counts, the indictment needed to expressly allege Mr. Opdahl knew the incriminating characteristics of the machine gun, which was count one, and the silencer, which was count two. Instead, the indictment only alleged that he knowingly possessed each firearm. But those are separate and distinct elements. An indictment must contain all essential elements. What about our cases with, say, aggravated identity theft, the Dvorak case, Prelagar, excuse me, which was one of the tax obstruction cases, where I think we've at least hinted that it's not necessary after the Supreme Court has indicated that the government has a higher burden of proof that that doesn't necessarily impact the requirements for an indictment? Judge, I'm not sure how these firearm cases relate to those types of cases. I guess my argument is relying on this court and the Supreme Court's dealing with the specific gun statutes. So do you think that this case is different from other cases because it's a gun statute? I do, Your Honor, and specifically because the Supreme Court has set forth a distinct element for these offenses, which this court has adopted, of course, and expounded upon, and that is that there needs to be a knowing possession of a firearm. That is the element, the first mens rea element. The second mens rea element requires the government to prove that defendant knew the characteristics of a particular firearm. And again, in this case, we're dealing with a machine gun and a silencer. So the Supreme Court in Staples and then this court in Bonk in White, White 1, have made clear that those are two distinct mens rea elements. Yeah, and I guess what I'm trying to figure out is, I think it's clear that that has to be submitted to the jury, to the jury at trial. What I'm wondering is whether that extends to the requirement in an indictment. It does, Your Honor. There is, at a base level, there is no difference between a jury instruction and an indictment. Both must contain all of the essential elements. What about our case law that speaks of, so long as it tracks the statute and the defendant has enough information to know what they have to defend against and it precludes any double jeopardy down the road. What do we do with that line of cases that we have? Certainly, that is part of it, Your Honor. My brief and my argument today relies on the Supreme Court case in Hamlin versus United States, which states that for an indictment, merely charging or citing the statute is not enough. And while language that generally tracks the statute is ordinarily sufficient, there's a big exception with that. And that is that the essential element has to be stated expressly, fully, and directly without any ambiguity or uncertainty. And what we have here is we have language in the indictment, in both counts, that at best conflates both of these mens rea requirements. Have there been any other courts that have ruled on this particular statute in the way that you're asking us to? Not that I'm aware of, Your Honor, and I don't believe that the briefing, my briefing, contained out-of-circuit cases analyzing this issue, nor the government's brief. We are relying... Staples has been around a while. Yes, it has, Your Honor. But there's also been some developments with Staples, particularly in the circuit, even after Staples, that required the element of the knowledge of firearms incriminating characteristics. This court held for a while that that did not apply to quasi-suspect weapons. And that essentially was, that was not essentially, that was absolutely overturned in White 1, where this court in Bonk said that that is an element that applies to all firearm offenses of this type, both the machine gun, which is a different statute than the unregistered silencer. So this court in Bonk has clearly stated that this is an element that must be proven. Staples states that it is an element, a mens rea element, that is in addition to knowing possessing, knowing possession of a firearm. Counsel, let me ask you about that. To me, this really comes down to the language in the indictment of the word knowingly. It's my understanding that the indictment charged him with knowingly possessing a machine gun. So why doesn't the word knowingly take care of this in terms of if you knowingly possess a machine gun, don't you know that it's capable of fully automatic fire? Your Honor, the problem with that is that was the same language that was used before Staples across the circuits, including this one, and even after Staples in this circuit in Barr. There was always a requirement that somebody know they possess the firearm. The word machine gun does not have an impact on this. I think that was also discussed in White 1, as well as the Supreme Court case in Rogers versus United States. In White, this court acknowledged that there was much confusion. It was an issue that had divided judges, but ultimately White concluded that knowingly possessing a firearm, so we can, I'm using that as a general phrase, knowingly possessing a machine gun, to be more specific to your question, does not expressly recite the Staples element. That was an explicit finding from White 1. And going back to Hamlin versus United States, that is a requirement for an indictment, that all elements be expressly, directly, fully, and with no ambiguity or uncertainty. White 1 controls, and this indictment was deficient. Yes, so if I understand your argument, your argument relies entirely upon the position that the indictment itself is deficient. Do you make any contention that the actual proof that was put in was deficient? Your Honor, are you asking about proof at trial or proof before the grand jury? What was put in the record? Your Honor, the evidence before the grand jury was insufficient to establish that the Staples element was met even before the grand jury. The record here reflects that this was a pretrial motion that was made before trial. The parties submitted jury instructions that did properly include the Staples element, so that matter was addressed at trial. But the issue here is the Fifth Amendment violation of having a defective indictment and going to trial on a defective indictment. I can see I am approaching my rebuttal time. If I may reserve my remaining time. Thank you. Thank you. Mr. Lee? May it please the Court. My name is Richard Lee, appearing on behalf of the United States. The indictment in this case charged Mr. Optal with knowingly possessing a machine gun and knowingly possessing a firearm, specifically a firearm silencer. The indictment sufficiently pleads the knowledge requirements for both counts. What about our case law that says an indictment must include every element of the offense and it must do so without ambiguity? Yes, Your Honor. In this case, for count one, it specifically states that he knowingly possessed a machine gun, which is a term of art. It's defined in the statute. And as Justice Ginsburg noted in Staples, in her concurrence, that knowingly possessed logically means possessed and knew that he possessed. And she stated in that case in Staples that the indictment in this case, but not the jury instruction, properly described this knowledge requirement. And that's because in Staples and white one, the mens rea was bifurcated from the fact that it was a whatever made the gun illegal. So in white one, the fact that or the characteristic that made the gun illegal was the bore diameter. And if you look at the jury instructions in white one, count one was that he knew it was a 12-gauge shotgun. But being a 12-gauge shotgun doesn't bring it into the parameter, the ambit of the National Firearms Act. Count two did not contain a mens rea. And it simply stated that the firearm had a bore diameter more than a half inch. But in this case, we do not bifurcate the mens rea from the machine gun part of it, which is exactly what the court noted in Rogers. In Rogers, the Supreme Court held, quote, in instructing the jury, the judge first explained that the statute defined the term firearm to include a silencer. He then instructed the jury that the defendant could not be found guilty without proof beyond a reasonable doubt, that the defendant knowingly possessed a firearm as defined above. Since the term firearm had been defined above to include a silencer, that instruction required the jury to determine that the defendant knew that the item he possessed was a silencer. So here, what distinguishes our case from White 1, other than the fact that White 1 was about the injury instructions, not the indictment, but in White 1, the mens rea was bifurcated from that physical trait that made it a regulated gun. And here, as in just like Staples and in Rogers, the mens rea is coupled with the fact that it's a machine gun in account to the fact that the gun is a silencer. Maybe you won't know the answer to this, but is this a one-off in your office or across the country? Is it typical that this particular charge is indicted without the element that Mr. Uphdahl is arguing should have been included? I have researched it. I would say that, you know, I can't tell you the percentage. I've seen it charged both ways. I would say based on my research, it's probably more are still charging it the way I'm charging it, which is that he knowingly possessed a machine gun. I have seen districts charge it as knowingly possessed a machine gun and knew it was a machine gun. I have seen districts charge it that way, but I would say that's in the minority. Counsel, Mr. Belmore expressed the view that the language in this indictment was no different than what was used before Staples. What's your response to that? I, you know, and that may be true. That, I mean, the statute itself has not changed since Staples. The statute itself charges that it is, it shall be unlawful for any person to transfer or possess a machine gun. And so, you know, we will look at that statute. In fact, the word knowingly isn't even in the statute. But here, even changing that, or, you know, even with Staples, it doesn't, the word knowingly is going to be applied to the fact that it is a machine gun as well. I don't think Staples would require that we add additional language into an indictment to fairly inform the defendant of what he's being charged with. If we were to agree with Mr. Epdahl on this issue, what is your position on where we look to see whether on the harmlessness? When I read the briefs, I thought I understood you to say that we would just look to the information that the grand jury heard. Is that your position? That certainly seems to be what Allen too stated. I mean, there's going to be cases where the grand jury transcript might not be available. I do think that's what the Allen too court was insinuating. But in this case, the grand jury transcript is available. And so I do think that would be the correct reading of Allen too, that the court would limit their review of the record to the grand jury transcript. Counsel, this is Judge Smith. What did the grand jury hear about the evidence? Your Honor, in this case, Special Agent Holter from the ATF testified, and he testified that Patrick Epdahl lived at home with his parents, that Patrick Epdahl's mother called 911 and reported that Patrick Epdahl had shot a gun through the roof of their house. Special Agent Holter testified that the parents stated that they did not purchase or own any of firearms parts or accessories that were found in their home. Special Agent Holter testified that when the officers arrived, they told the officers that Mr. Epdahl was still in the house with a firearm. Special Agent Holter testified that when the officers searched the house, they found three bullet holes in the ceiling of the living room and three shell casings on the floor in the living room. Special Agent Holter testified that the officers found the machine gun in the basement of Epdahl's residence. Special Agent Holter testified that the machine gun had a machine gun conversion device, also known as a Glock switch, affixed to the back of the gun. Special Agent Holter testified that Mr. Epdahl fired the machine gun, prompting his mother to call 911. And as to the silencers, Special Agent Holter testified that in a subsequent search of the Epdahl residence, agents found several firearm parts to include a firearm silencer. Special Agent Holter testified that the silencer or described the silencer as a, quote, privately made firearm silencer with no known manufacturer model or serial number. Special Agent Holter testified that privately made silencers come through the mail in kits to be assembled by the purchaser. And Mr. or Special Agent Holter testified that Epdahl's parents stated that they did not purchase or own any of the firearm parts or accessories that were found in their home. With Epdahl living with his parents and possessing and shooting the machine gun, coupled with Mr. Epdahl's parents not owning or purchasing the machine gun or silencer found in their home, I believe a grand jury could reasonably infer probable cause for that the machine gun and silencer belonged to Mr. Epdahl and that he knew what these items were. I see that I'm almost out of time. Are there any more questions from the court? Well, based on that, the United States is requesting that the court affirm the judgment of the district court. Thank you. Thank you, Mr. Lee. Your Honors, the government here cannot prove the error, the defect in the indictment was harmless beyond a reasonable doubt. The standard here is whether any rational grand jury would find the staples element for either account. Do you think it's different for the two counts? Do you think the strength of the evidence that the grand jury heard was different for the silencer? I do. I think starting with count two, Your Honor, the silencer, I would mention the grand jury transcript is short. It is brief. Maybe that is by design. Maybe that is custom. But I did want to point out that there was no mention of the silencer's incriminating characteristics. It was referred to simply as a silencer. A silencer was seized. It was found. It's a silencer, but not what a silencer is and not what its incriminating characteristics are. What about the fact that it was a kit, that it was something that someone orders and presumably would know what they were ordering and therefore sort of understand what it is that was in that box when it arrived? Your Honor, I think that is more the trial evidence. The grand jury testimony was that silencers that are privately made typically are sent in kits. There was no evidence that there was a kit seized. The only reference is gun parts, which is vague. So with the silencer, there was no mention that a silencer has the design to diminish the report of a firearm, which is its incriminating characteristics. Beyond that, there was no evidence to tie Mr. Opdahl's knowledge of the silencer or any firearm, including the machine gun. When we're talking about a machine gun, this is a Glock switch. This is a conversion device. It is a very small, to quote Agent Holter's grand jury testimony, device that affixes to the back of a pistol slide. There is nothing about its extrinsic indications that makes it obvious to anyone, let alone Mr. Opdahl, that this was a machine gun. That evidence was entirely lacking and there was no probable cause to support the staples elements. Therefore, this error was not harmless and I'm asking the court to reverse and remand the district court. Thank you. Thank you. Thank you to both counsel for your arguments today.